UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PANDA RESTAURANT GROUP, INC.,

Plaintiff,

v.

LUNCHBOX TECHNOLOGIES, INC.,

Defendant.

PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF AND FOR FINDING
LUNCHBOX TECHNOLOGIES, INC. LIABLE FOR JUDGMENT

Plaintiff Panda Restaurant Group, Inc. ("Panda" or "Plaintiff"), by its undersigned attorneys, for its Complaint against Defendant Lunchbox Technologies, Inc. ("Lunchbox" or "Defendant") alleges as follows:

NATURE OF THE ACTION

1.      In this action, Panda seeks a declaration that Lunchbox is liable for the entirety of a $3,649,650.44 Judgment (the "Judgment") obtained against NovaDine, Inc. ("NovaDine" or "Judgment Debtor") on the grounds that: (i) Lunchbox is the mere continuation of NovaDine and therefore should be liable as its successor; (ii) a de facto merger occurred between NovaDine and Lunchbox such that Lunchbox assumed all liabilities of NovaDine, including the Judgment; or (iii) Lunchbox is the alter ego of NovaDine. Panda also asserts a claim for fraudulent transfer, alleging that NovaDine, with knowledge of the possible judgment of attorneys' fees, unlawfully transferred all of its assets to Lunchbox to avoid liability to Panda.

2.      Panda and NovaDine were parties to an Application Service Provider Agreement ("Agreement") whereby NovaDine provided an online ordering platform for Panda's restaurants. NovaDine later defaulted on that Agreement. Following an arbitration, Panda obtained an

1

arbitration award in its favor and against NovaDine in the amount of $3,649,650.44. The arbitration award was later confirmed, and Judgment was entered in United States District Court for the Central District of California on December 17, 2024. On June 17, 2025, Panda properly registered the Judgment in the action *Panda Restaurant Group v. NovaDine Inc.'s*, Civil Action No.: 25-mc-00216-JLR, in the Southern District of New York (**Ex. A**).

3.      This action is necessitated by Panda's failed attempts to collect the Judgment from NovaDine. NovaDine no longer operates and, on information and belief, does not have any assets. Rather, NovaDine transferred all of its assets to a New York company, Lunchbox.

4.      Plaintiff has been harmed by Lunchbox and NovaDine's failure to satisfy the Judgment and pay the amounts owed to Panda, plus interest accruing since.

5.      Accordingly, Panda files this action to obtain a declaration from the Court that Lunchbox is liable for the Judgment in favor of Panda and against NovaDine and, in the alternative, to set aside the merger of Lunchbox and NovaDine as a fraudulent transfer.

## PARTIES, JURISDICTION, AND VENUE

6.      Panda is a California corporation with a corporate headquarters at 1683 Walnut Grove Avenue, Rosemead, California, 91770, United States.

7.      Upon information and belief, Defendant Lunchbox is a New York corporation with headquarters at 228 Park Ave S, PMB 68378, New York, New York 10003. Upon information and belief, Defendant maintains a principal place of business at 1216 Broadway, New York, New York 10001.

8.      This Court also has a subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different States and the amount in controversy

exceeds $75,000. *See* 28 U.S.C. §1332(c)(1)(C) (corporation is deemed citizen of state where its principal place of business is).

9.      This Court has personal jurisdiction over Defendant given it is in New York and conducts business activities in this District.

10.      Venus is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in New York county within the Southern District of New York.

**FACTS COMMON TO ALL COUNTS**

*NovaDine Defaults on the Agreement, and the Parties Fail to Mediate, Leading to Arbitration*

11.      On September 12, 2013, Panda and NovaDine entered the Agreement for an online ordering service solution. (Application Service Provider, **Ex. B**). Section 10 of the Agreement provides that in any arbitration "between the parties concerning interpretation of any provision or performance by a party under this Agreement…, [t]he prevailing party shall be entitled to reimbursement of attorney fees, costs and expenses incurred in connection with the arbitration." (*Id.* § 10, the "Prevailing Party Provision"). Following numerous service disruptions, in May 2020, Panda notified NovaDine that it would transition to a new provider.

12.      Thereafter, Panda and NovaDine, on multiple occasions between December 2021 and March 2022, participated in informal mediation in Los Angeles County, California, and private mediation with the American Arbitration Association ("AAA"). During this private mediation, Panda learned that NovaDine had started efforts to rid itself of assets and make itself judgment proof from a possible judgment under the Prevailing Party Provision by pursuing a merger with Lunchbox. Efforts to mediate failed, and on May 16, 2022, arbitration between the parties commenced. *NovaDine, Inc. v. Panda Restaurant Group, Inc.*, JAMS Ref. No. 522000747 (hereinafter the "Arbitration").

3

*Parties Moves Forward with the Arbitration, Panda Prevails, and Obtains Judgment of $3,649,650.44.*

13.     NovaDine filed a Demand for Arbitration on or around May 16, 2022. Panda and NovaDine participated in an arbitration hearing from October 2, 2023 until October 13, 2023.

14.     The arbitrator issued a final award on July 2, 2024 ("Final Award") (attached as **Ex. C**) awarding Panda $3,649,650.44 from NovaDine. In the Final Award, Panda prevailed on its claim for attorneys' fees under the Prevailing Party Provision.

15.     Panda filed a petition to confirm the Award with the United States District Court - Central District of California on August 16, 2024. Panda served NovaDine on August 22, 2024. The Court confirmed the Award on December 17, 2024, and ordered NovaDine to pay Panda $3,649,650.44, plus interest, which was due and payable immediately upon entry of the Judgment. (attached as **Ex. D**). On June 17, 2025 counsel for Panda registered the Judgment in the Southern District of New York in the action *Panda Restaurant Group v. NovaDine Inc.'s*, Civil Action No.: 25-mc-00216-JLR. (*See* **Ex. A**).

*With Knowledge of Possible Liability to Panda Under the Prevailing Party Provision, and Contemplated Litigation, NovaDine Rids Itself of Assets and Transfers All Assets to NovaDine, making Lunchbox NovaDine's Successor.*

16.     With knowledge of the dispute and potential litigation brewing after NovaDine was already aware that it could be liable to Panda for its attorneys' fees if it were not the prevailing party in such litigation, NovaDine began exploring ways to rid itself of its assets to avoid liability to Panda. With knowledge that the Parties had failed to come to a resolution at an information mediation in December 2021 and with a formal mediation scheduled for March 22, 2022, NovaDine entered into an agreement to sell its assets to Lunchbox.

17.     Unbeknownst to Panda, on March 6, 2022, Lunchbox and NovaDine agreed to a Term Sheet. (Term Sheet, attached as **Ex. E**). The Term Sheet effectively transferred all of

4

NovaDine's assets to Lunchbox. The Term Sheet, which summarizes the principal terms of the proposed acquisition of NovaDine, provides, among other things, that "*Lunchbox would acquire 100% of the equity interests of NovaDine for a purchase price of 'up to $72,000,000.*" Panda only learned about this Term Sheet at the formal mediation nearly two weeks later.

18.    After the formal mediation failed, Lunchbox and NovaDine moved forward with their plan to make NovaDine judgment proof. On June 6, 2022, Lunchbox and NovaDine entered an Agreement and Plan of Merger (the "Merger Agreement") wherein Lunchbox would *acquire, fully own, and control NovaDine* "and will cause [NovaDine] to conduct its businesses in whatever manner [Lunchbox] determines to be in the best interests of [Lunchbox] and its Affiliates in their sole discretion." (Merger Agreement, **Ex. F**, 10-11, §1.9(c))

19.    The Merger Agreement further required NovaDine to completely migrate its online ordering system and all related technology to Lunchbox. (*Id.* at 80). Additionally, as part of the merger, George Istfan ("Istfan"), the former majority shareholder of NovaDine, transferred his shares of NovaDine to Lunchbox, received Lunchbox shares and additional consideration, and became the Chief Technology Officer of Lunchbox, with a generous compensation arrangement. Moreover, the Merger Agreement provides that Lunchbox controls any proceeds NovaDine may be awarded in the Arbitration. **(***See* **Ex. F**, Merger Agreement, § 5.14, p.55 ("Damages resulting from the Panda Express Matter…shall be payable to [Lunchbox] pursuant to § 7.2(a)(xi).")

20.    The Merger Agreement defines "Panda Express Litigation Proceeds" as "any payment by Panda Express to the Company in connection with the settlement or final and non-appealable resolution of the Panda Express Matter, net any Damages resulting from the Panda Express Matter payable to Parent pursuant to Section 7.2(a)(xi) and any Company Transaction Expenses then unpaid." (*Id.* at 76).

21.     Further, the Merger Agreement provides that "any Damages resulting from the Panda Express Matter shall not be paid to the Securityholder Representative and shall be payable to the Parent pursuant to Section 7.2(a)(xi)." (*Id.*). Section 7.2(a)(ix) provides that: NovaDine stockholders agree to indemnify Parent for any Damages resulting from the Panda Express Matter.

22.     Both NovaDine and Lunchbox were always aware of the Prevailing Party Provision prior to the Merger Agreement.

23.     On August 25, 2022, Lunchbox and NovaDine filed their Articles of Merger, which are signed by Lunchbox's President, Nabeel Alamgir ("Alamgir"), as the new President of NovaDine. (*See* **Ex. G**, Articles of Merger).

24.     After the *de facto* merger between NovaDine and Lunchbox occurred**,** Panda pushed forward in the arbitration proceedings. Extensive discovery and testimony unearthed Novadine's and Lunchbox's unlawful scheme to rid NovaDine of its assets and avoid liability for a potential judgment of attorneys' fees to Panda under the Prevailing Party Provision.

25.     There is a lack of separation between NovaDine and Lunchbox. Nabel Alamgir is the president of Lunchbox, which owns NovaDine, and Alamgir is also the president of NovaDine. He became president of NovaDine automatically upon the closing of the merger between the companies. NovaDine does not have any officers or employees, as all employees are now classified as Lunchbox employees. Lunchbox holds all of NovaDine's assets, and NovaDine no longer has any assets of its own. For all practical purposes, NovaDine has been merged and dissolved, and its operations are fully consolidated under Lunchbox. Alamgir is listed as the sole member of the Board of Directors for NovaDine.

26.     Prior to the merger, NovaDine's largest shareholder and owner was Istfan. As a result of the merger, NovaDine shareholders received their respective shares on a percentage basis,

and Istfan became the Chief Technology Officer of Lunchbox. The amount that NovaDine

shareholders receive from the merger agreement is conditioned upon Lunchbox's financial

performance over the next three years. Proceeds from the arbitration with Panda are payable to

NovaDine shareholders in cash. Since the merger, NovaDine has not entered any contracts, and

Lunchbox did not issue any formal letter demanding indemnification by NovaDine.

27.     Indeed, testimony revealed the lack of separation between NovaDine and

Lunchbox.

> Q. Are you the president of NovaDine? A. No; I'm the president of Lunchbox that owns NovaDine. (Alamgir Dep. 05/18/2023, attached as **Ex. H**, 15:5-08).
>
> Q. Have you ever been the president of NovaDine? A. No, I have not been the president of Nova Dine. (*Id.* at 15:09-12).
>
> Q. Are you aware of any other officers of NovaDine that are currently officers? A. Lunchbox owns NovaDine, so NovaDine should not have any officers involved. (*Id.* at 15:13-19).
>
> Q. So to the best of your knowledge, NovaDine no longer has any officers; is that correct? A. To the best of my knowledge, yes, NovaDine should not have any officers any longer. (*Id.* at 15:21-24).
>
> Q. Okay. And to the best of your knowledge, NovaDine doesn't have any employees, correct? A. Correct. They are now Lunchbox employees. (*Id.* at 15:25-16:03).
>
> Q. Do you believe that NovaDine, has any assets? A. No; **I believe Lunchbox has all of NovaDine's assets**. (*Id.* at 17:05-11 (emphasis added)).
>
> Q. Do you believe that NovaDine continues to exist as a legal entity? A. I think NovaDine is no longer and Lunchbox owns NovaDine. (*Id.* at 198:12-15).

28.     After Alamgir was informed that NovaDine still existed, and that he – Alamgir –

was its sole employee and sole officer (and even sole board member, though he only learned it

during the questioning itself), Alamgir offered the following:

> Q. Now, you're the -- you're also the president of NovaDine, correct? A. Okay. Yes, I -- I went back, and I was told, unfortunately, I'm also the president of NovaDine. So last time I

said I was not, I was incorrect. I am also the president of NovaDine. (Alamgir Dep. 07/14/2023, **Ex. I**, 17:04-09).

Q. Okay. And how long have you been the president of NovaDine? A: Well, listen, when we acquired them, we automatically -- I automatically when -- the day the merger happened, I became the president of NovaDine. That's what I was told. So when the M and A was closed, that's when I became the president. (*Id.* at 17:10-16).

Q. You're still the president of NovaDine, right? A. So I'm not sure. The company is like no longer, right? So I'm not sure if I am. But if there is a company that is NovaDine, I am still the president, yes. (*Id.* at 17:17-22).

Q. You don't know, one way or the other, about **whether NovaDine, continues to exist A. So it doesn't continue to exist for us. For us, you know, it's merged into Lunchbox.** Lunchbox is the parent company. **We don't operate them separately.** We've dissolved that company. So from what I understand, **there is no more NovaDine, right? It's only Lunchbox**. (*Id.* at 17:23-18:05 (emphasis added)).

Q. And this particular document indicates that you are -- you are on the Board of Directors and that there's one Board of Directors; is that right? A. That's what it says. (*Id.* at 47:04-07).

Q. So you didn't know that -- you didn't know that you're on the Board of Directors for NovaDine? A. I know it -- I know it now. (*Id.* at 47:12-15).

29.    Moreover, Istfan's testimony further supports the lack of separation between NovaDine and Lunchbox. Istfan testified to the following:



██ ████████████████████████████████████████████████

██ ████████████████████████████████████████████████

30.     On April 1, 2025, Panda sent a demand to Lunchbox asserting its legal position that Lunchbox should be held liable for the Judgment because Lunchbox is NovaDine's alter ego, and that Panda intends to pierce the corporate veil. (attached hereto as **Ex. K**). Lunchbox ignored this demand.

31.     To date, Panda has not been able to recover any portion of the Judgment. Because NovaDine successfully avoided liability to Panda through the *de facto* merger and no longer has any assets, Panda seeks a declaration that Lunchbox is liable for the Judgment.

## COUNT ONE: DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201

### (Lunchbox is the Mere Continuation of NovaDine and Is Liable as Its Successor)

32.     Panda realleges and incorporates by reference herein in their entirety the allegations contained in the above paragraphs.

33.     Lunchbox is liable for the Judgment as a successor to NovaDine because it is a mere continuation of NovaDine.

34.     Upon the sale of its assets to Lunchbox, NovaDine's operations ceased, and all employees, technology, and customers were transferred to Lunchbox.

35.     Not only were all employees and assets transferred from NovaDine to Lunchbox, but customers were also transferred, the service provided remained the same, and notably, NovaDine's goodwill was also transferred.

36.     Such continuation supports finding that Lunchbox is the successor to NovaDine and liable for the Judgment awarded to Panda.

37.    A declaratory judgment is ripe for adjudication here.

38.    There is a substantial controversy because Panda and Lunchbox dispute whether Lunchbox is a mere continuation of NovaDine and whether it should be liable for the Judgment, evidenced by the fact that Lunchbox failed to respond to NovaDine's demand to Lunchbox for the Judgment.

39.    Panda and Lunchbox have adverse interests because Panda asserts that Lunchbox owes Panda the Judgment amount, but Lunchbox has refused to pay Panda any amount.

40.    There is sufficient immediacy of this controversy because the Judgment was on December 17, 2024, and Panda has not been able to recover any amount to date.

41.    Declaratory relief is appropriate here where a judgment will clarify Lunchbox's liability, and a judgment would finalize the controversy.

**COUNT TWO: DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**

**(Lunchbox Assumed All Liabilities Following its Merger with NovaDine and is Liable as the Successor Pursuant to a *De Facto* Merger)**

42.    Panda realleges and incorporates by reference herein in their entirety the allegations contained in the above paragraphs.

43.    The Merger Agreement between Lunchbox and NovaDine was a *de facto* merger, and this Court should find that Lunchbox assumed all liabilities of Novadine, including the Judgment, following the Merger. *See*, **Ex. F**, Merger Agreement. Section 5.14 of the relevant Merger Agreement states: "Damages resulting from the Panda Express Matter…shall be payable to [Lunchbox] pursuant to § 7.2(a)(xi)." Furthermore, Section 7.2(a)(jx) provides that NovaDine stockholders agree to indemnify Lunchbox for any Damages resulting from the Panda Express Matter.

44.    Pursuant to the Merger Agreement between NovaDine and Lunchbox, (a) all of NovaDine's assets have been transferred or purchased by Lunchbox; and (b) Lunchbox employed all of NovaDine's employees.

45.    Moreover, NovaDine is left with no assets, and is merely a shell of Lunchbox.

46.    There is a continuity of ownership between Lunchbox and NovaDine.

47.    The Articles of Merger filed by Lunchbox and NovaDine is signed by Lunchbox's President, Nabeel Alamgir, as the new President of NovaDine. It provides that the corporation has a principal office at 1216 Broadway, New York, New York 10001, and named Nabeel Alamgir as the President of NovaDine. Alamgir is now the Executive Chairman of Lunchbox.

48.    Moreover, as part of the merger, Istfan, the former majority shareholder of NovaDine, transferred his shares of NovaDine to Lunchbox, received Lunchbox shares and additional consideration, and became the Chief Technology Officer of Lunchbox, with a generous compensation arrangement.

49.    Further, the sworn testimony from the Arbitration revealed that all of NovaDine shareholders became shareholders of Lunchbox.

50.    Lunchbox further assumed *all* liabilities when acquiring NovaDine by continuing NovaDine's business.

51.     Pursuant to the Merger Agreement, § 1.9(c)(B)(1) "[Lunchbox] will own and control [NovaDine] and will cause [NovaDine] to conduct its businesses in whatever manner [Lunchbox] determines to be in the best interests of [Lunchbox] and its Affiliates in their sole discretion."

52.    Following the merger, there were no employees or business operations occurring under NovaDine and all business is now conducted under Lunchbox.

53.     Because Lunchbox acquired all assets of NovaDine and simply carried on with NovaDine's operations, this Court should declare that Lunchbox assumed the liabilities of NovaDine vis-à-vis the merger.

54.     There was further continuity of assets, management, and business operation between Lunchbox and NovaDine.

55.     Though NovaDine remained *on paper* a subsidiary of Lunchbox, NovaDine had no employee, officer, or director other than Mr. Alamgir. *See* **Ex. J**, Istfan Dep. 06/02/2023, at 296:21-297:12 (at the time of the acquisition, all former NovaDine employees became Lunchbox employees, and NovaDine had no employees other than Mr. Alamgir who became its President); *Id.* at 298:18-20 (after the acquisition NovaDine had no employees other than Mr. Alamgir); *Id.* at 297:25-298:4 (Mr. Alamgir could not personally provide payment processing services); **Ex. H**, Alamgir Dep. 05/18/2023, 15:13-16:03 (as of the date of the acquisition NovaDine had no employees).

56.     Further, NovaDine responded during discovery that "Lunchbox did not have sales or licensing agreements with NovaDine prior to the acquisition. When [Lunchbox] completed the acquisition, that is when *[Lunchbox] inherited their sales and their technology.*"

57.     A declaration is appropriate because the Court can make a finding that Lunchbox merely continued operating NovaDine finding successor liability is appropriate here.

58.     There is a substantial controversy because Panda and Lunchbox dispute whether Lunchbox assumed the liabilities of NovaDine following its merger therewith and should be liable for the Judgment as NovaDine's successor because a *de facto* merger occurred, evidenced by the fact that Lunchbox refused to respond to Panda's demand for the Judgment.

59.     Panda and Lunchbox have adverse interests because Panda asserts that Lunchbox owes Panda the Judgment amount as a result of the *de facto* merger, but Lunchbox as refused to pay Panda any amount.

60.     There is sufficient immediacy of this controversy because the Judgment was on December 17, 2024, and Panda has not been able to recover any amount.

61.     Declaratory relief is appropriate here where a judgment will clarify Lunchbox's liability as a successor, and a judgment would finalize the controversy.

**COUNT THREE: DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**

**(Lunchbox is NovaDine's Alter Ego)**

62.     Panda realleges and incorporates by reference herein in their entirety the allegations contained in the above paragraphs.

63.     Lunchbox is the alter ego of NovaDine, despite it being Lunchbox's subsidiary, because their distinct corporate identities have been completely disregarded.

64.     NovaDine lacks any corporate formalities, as it no longer operates. NovaDine no longer provides any services, no longer has any employees or customers, and no longer conducts any business. *See* **Ex. H**, Alamgir Dep. 05/18/2023, 15:13-24 (NovaDine does not have any officers); *id.* at 15:25-16:03 (all NovaDine employees became Lunchbox employees); *Id.* at 198:12-15 (NovaDine no longer conducts business).

65.     The Merger Agreement further left NovaDine with inadequate capitalization as Lunchbox assumed all assets of NovaDine.

66.     The Merger Agreement addressed that any profits from the Panda litigation would be directed towards Lunchbox. Notably, however, NovaDine failed to reserve *any* funds and assets if Panda prevailed in the arbitration.

67.     Thus, after the arbitration commenced, NovaDine knowingly entered into a merger agreement and failed to consider nor prepare for any judgment in favor of Panda.

68.     Further, NovaDine's funds are commingled with Lunchbox's assets. Indeed, testimony unearthed that NovaDine shareholders (who were subsequently transferred to shareholders of Lunchbox) have received or will receive proceeds from Lunchbox based upon the success of the first three years following the merger. ████ ███████████████████████

69.     As such, funds rightfully belonging to NovaDine shareholders are in Lunchbox's possession and use.

70.     There is a complete overlap between ownership and management between Lunchbox and NovaDine, as well.

71.     Although NovaDine remained *on paper* a subsidiary of Lunchbox, NovaDine has no employee, officer or director other than Mr. Alamgir. ████ ████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

72.     The Judgment against NovaDine is enforceable against Lunchbox by piercing the corporate veil.

73.     A declaratory judgment is appropriate here.

74.     There is a substantial controversy because Panda and Lunchbox dispute whether Lunchbox is the alter ego of NovaDine, and as such should be liable for the Judgment, as evidenced by the fact that Lunchbox refused to respond to Panda's demand for the Judgment.

75.     Panda and Lunchbox have adverse interests because Panda asserts that Lunchbox owes Panda the Judgment amount, but Lunchbox has refused to pay Panda any amount.

76.     There is sufficient immediacy of this controversy because the Judgment was on December 17, 2024, and Panda has not been able to recover any amount to date.

77.     Declaratory relief is appropriate here where a judgment will clarify Lunchbox's liability and whether Lunchbox is NovaDine's alter ego, and thus a judgment would finalize the controversy.

## COUNT FOUR: FRAUDULENT CONVEYANCE UNDER N.Y. § 273
## (IN THE ALTERNATIVE)

78.     Panda realleges and incorporates by reference herein in their entirety the allegations contained in the above paragraphs.

79.     In the alternative, NovaDine violated fraudulent conveyance section of the New York Debtor and Creditor Laws ("DCL") § 273 when it transferred all its assets to Lunchbox in an attempt to avoid potential liability to Panda under the Prevailing Party Provision.

80.     As the transferee and beneficiary of a fraudulent transfer, Panda may recover damages against Lunchbox.

81.     The Merger Agreement between NovaDine and Lunchbox was constructively fraudulent.

82.     The transfer for all of NovaDine's assets was not for fair consideration because it was not made in good faith and did not account for any potential judgment it would incur in favor of Panda against NovaDine under the Prevailing Party Provision, even though NovaDine knew it faced potential liability.

83.     NovaDine and Lunchbox did not act honestly, fairly and openly when NovaDine transferred all assets to Lunchbox while the Arbitration was ongoing and it knew it could owe Panda under the Prevailing Party Provision.

15

84.     Indeed, NovaDine and Lunchbox were clearly aware of a potential judgment, because they accounted for and included in the Merger Agreement, wherein proceeds of a potential judgment would be directed to Lunchbox. (*See*, **Ex. F**, Merger Agreement, § 5.14, p.55 ("Damages resulting from the Panda Express Matter…shall be payable to [Lunchbox] pursuant to § 7.2(a)(xi).").

85.     To the extent Lunchbox denies its obligated to pay, the inclusion of an indemnification provision in the agreement suggests otherwise. *Id.* at §7.2(a)(ix). This provision appears to contemplate the possibility that Lunchbox could be held liable for damages and provides a mechanism for reimbursement from the NovaDine stockholders, indicating that Lunchbox and NovaDine did, in fact, consider the potential for such liability and sought to draft around it. As such, NovaDine and Lunchbox failed to act in good faith.

86.     The transfer of all of NovaDine's assets to Lunchbox left NovaDine insolvent and unable to pay the Judgment, as NovaDine no longer has assets. (*See* Alamgir Dep. 05/18/2023, attached as **Ex. H**, 17:05-11) (Alamgir testifying that "Lunchbox has all of NovaDine's assets.")

87.     Accordingly, the Merger Agreement was constructively fraudulent.

88.     New York Debtor and Creditor Law § 276 provides the remedies for a creditor and as such Panda may obtain (1) "avoidance of the transfer or obligation"; (2) "an attachment or other provisional remedy against the assets transferred or other property of the transferee"; (3) "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property"; "appointment of a receiver to take charge of the assets transferred or of other property of the transferee"; or "any other relief the circumstances may require"; and (5) a court order to "levy execution on the asset transferred or its proceeds." § 276(a)-(b).

## REQUEST FOR RELIEF

**WHEREFORE**, Panda respectfully requests that the Court enter an order declaring:

89.     As to the First Count, that Lunchbox is the mere continuation of NovaDine;

90.     As to the Second Count, that Lunchbox and NovaDine entered a *de facto* merger;

91.     As to the Third Count, that Lunchbox is NovaDine's alter ego;

92.     As to the Fourth Count, in the alternative, that Panda successfully proved a claim for a fraudulent transfer under New York Debtor and Creditor Law § 273 against Lunchbox;

93.     As to the Fourth Count, in the alternative, that Panda is entitled to have the conveyance set aside or annulled to satisfy the Judgment *or* disregard the conveyance and attach or levy execution upon the property conveyed under New York Debtor and Creditor Law § 276;

94.     That the judgment domesticated on June 17, 2025 in favor of Panda and against NovaDine is fully enforceable against Lunchbox;

95.     That Panda be awarded attorneys' fees and costs incurred in prosecuting this matter to be filed under a separate petition; and

96.     That Panda be awarded such other and further relief as the Court deems just and proper.

Dated: November 21, 2025

**GREENBERG TRAURIG, LLP**

By:     /s/     *Dale R. Goldstein*
        Dale R. Goldstein
        Ashley A. Leblanc
        One Vanderbilt Avenue
        New York, New York 10017
        GoldsteinD@gtlaw.com
        LeBlancA@gtlaw.com
        Telephone: (212) 801-9200

        Howard K. Jeruchimowitz*

Aaron S. Klein*
360 N. Green Street, Suite 1300
Chicago, Illinois 60607
Email: Jeruchimowitzh@gtlaw.com
Email: Aaron.Klein@gtlaw.com
Telephone: (312) 456-8400

*Attorneys for Judgment Creditor
Panda Restaurant Group*

*\* pro hac vice forthcoming*